IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

DADRAIN DANTWONE BANKS                                                PLAINTIFF

v.                             Civil No. 6:20-CV-06075

SERGEANT FORD, DEPUTY SANCHEZ,                                        DEFENDANTS
CORPORAL COUCH, CAPTAIN
HALVERSON, LIEUTENANT
STAPLETON, SERGEANT S. HARMON,
NURSE JASON, NURSE BJ, NURSE
BLEVINES, DEPUTY REEDY, DEPUTY
WAUNDERLIN, DEPUTY BLUNKEL,
LIEUTENANT JAMISON, DEPUTY
HARRELL, DEPUTY TILLY,
LIEUTENANT ANSLEY, and DEPUTY
CALDWELL (All of Garland County
Detention Center)

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This is a civil rights action provisionally filed pursuant to 42 U.S.C. § 1983.  Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3)(2011), the Honorable Susan O. Hickey, Chief United States District Judge, referred this case to the undersigned for the purpose of making a Report and Recommendation.

The case is before the Court for preservice screening under the provisions of the Prison Litigation Reform Act (PLRA).  Pursuant to 28 U.S.C. § 1915A, the Court has the obligation to screen any complaint in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).

### I. BACKGROUND

Plaintiff filed his Complaint in the Eastern District of Arkansas on July 14, 2020.  (ECF No. 2).  It was transferred to this District on July 16, 2020.  (ECF No. 4).  Plaintiff is incarcerated

1

in the Garland County Detention Center ("GCDC"), and his claims center on his incarceration there. Plaintiff filed an *in forma pauperis* ("IFP") application with his Complaint, which was blank except for his signature and a date. He stated that GCDC staff refused to fill out the application. (ECF No. 1). On August 11, 2020, the Court entered an Order directing Plaintiff to file a completed IFP application or pay the filing fee by September 1, 2020, or his case would be subject to dismissal. He was advised that he needed to fill out the portion of the application concerning his income and assets, and that GCDC staff were to complete the certificate of inmate account. The Court further advised Plaintiff that he should inform the Court if GCDC staff refused to fill out the certificate of inmate account. (ECF No. 13). On August 20, 2020, Plaintiff filed his Amended IFP application with the certificate of inmate account blank. He stated that GCDC staff continued to refuse to complete the certificate of inmate account. (ECF No. 15). On August 21, 2020, the Court entered an Order directing Sheriff McCormick to complete the inmate certificate of account and return it to the Court by September 11, 2020. (ECF No. 19). A completed certificate of inmate account was filed with the Court of September 11, 2020. (ECF No. 21). On September 15, 2020, the Court entered an Order granting Plaintiff IFP status. (ECF No. 22).[1]

On September 18, 2020, the Court entered an Order directing Plaintiff to file an Amended Complaint to give Plaintiff the opportunity to correct complaint deficiencies. (ECF No. 24). Plaintiff filed his First Amended Complaint on September 29, 2020. (ECF No. 31). Because the First Amended Complaint is essentially unintelligible, including pages with the margins filled in, random artwork, and because it fails to follow the Court's format and instruction for filing a § 1983 complaint, the Court entered a second Order directing him to file an Amended Complaint,

---

[1] In the period between the filing of the initial Complaint and the granting of IFP status, Plaintiff also filed several motions. (ECF Nos. 7, 11, 12, 14, 17). He also filed a Motion for Injunction (ECF No. 16), for which a report and recommendation was filed on November 17, 2020. (ECF No. 39).

directing him to refrain from the use of artwork and to utilize the § 1983 form for his claims. (ECF No. 32). Plaintiff submitted his Second Amended Complaint on October 7, 2020. [2] (ECF No. 33).

On January 4, 2021, Plaintiff filed a Motion to Voluntarily Dismiss all female medical and facility staff in all of his pending cases in this District. (ECF No. 41). Plaintiff identified the female medical staff as nurses Kayla, Bruse, Denise, Anna, Walker, and Feilder. (*Id*. at 1). He identified the female facility staff as Corporal York, Corporal Jones, Corporal Hall, Sergeant Branstetter, Sergeant Sowell, and Captain Belinda Cosgrove. (*Id*. at 5). This Motion was granted on January 22, 2021. (ECF No. 42).

For his first claim, Plaintiff alleges that excessive force was employed against him on July 19, 2020. (ECF No. 33 at 4). Plaintiff names Corporal Couch and Nurse Jason for this claim.[3] Plaintiff alleges that Corporal Couch grabbed his arm, twisted his shoulder and wrist, stepped on the back of his legs, and pushed his face and head into the bunk in his cell. (*Id*.) This was done so that the nurses could administer an injection of the "mental health" drug Haldol,[4] which Plaintiff alleges he had refused, and for which he alleges they had no court order to administer.[5] (*Id*. at 4-5). He alleges there were no pictures taken and he was not given a physical exam after they "wrestled [him] down." (*Id*. at 5). Later in his Complaint, Plaintiff indicates it was Nurse Jason

---

[2] Shortly after filing his Second Amended Complaint, Plaintiff filed a Motion to be transferred to the Arkansas State Hospital, which was denied. Mail sent to him in another case in this District was subsequently returned, indicating he was no longer at GCDC, raising the question as to whether he was in GCDC, the State Hospital, or elsewhere. At this point in time, however, it is not clear why the mail was returned, and Plaintiff remains at GCDC. (*Banks v. Jamison*, Case No. 6:20-cv-06110).

[3] Plaintiff also lists Deputy Reedy, Deputy Harrell, Corporal Midkiff, Willcut, and "other Doe's," but he makes no allegations against them. "Liability under Section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights." *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990) (citing *Rizzo v. Goode*, 423 U.S. 362, 370 (1976)).

[4] Haldol is a first-generation antipsychotic drug. *Prescriber's Digital Reference*, https://www.pdr.net/drug-summary/Haldol-haloperidol-942. (last accessed Feb. 10, 2021).

[5] Plaintiff later appears to allege that they showed him a court order, but this is not clear from the complaint. (ECF No. 33 at 17).

who administered the shot in July and September of 2020. (*Id*. at 17). He proceeds against Defendants in their official and personal capacities. (*Id*. at 4).

For his second claim, Plaintiff alleges that he was denied medical care on several dates in June and July of 2020. (*Id*. at 5). Plaintiff provided facts only for June 17, 2020, when he alleges that former Defendant Nurse Kayla lied to him about the amount of Tylenol she was going to give him.[6] He further alleges TurnKey policy does not require nurses to "sign off" before responding to a medical call and do not carry lap-top[7] computers with them during sick calls. Plaintiff does not allege how he was harmed by these policies. (*Id*. at 6). As Nurse Kayla is no longer a Defendant in this case, this claim will not be discussed further.

For his third claim, Plaintiff alleges he was denied access to the courts on several dates in September of 2020. (*Id*. at 33). He names Deputy Blunkel, Deputy Cooper,.[8] He proceeds against them in their official and personal capacity. (*Id*.). Plaintiff alleges that Deputy Blunkel failed to mail out Plaintiff's legal mail and Deputy Cooper brought legal mail back to him and pushed it under his door. (*Id*.). Plaintiff alleges GCDC does not have a mailbox for inmates and does not require that all mail be handled by mail room staff in full view of video cameras. (Defendant at 7).

For his fourth claim, Plaintiff appears to make a reference to a violation of his due process rights, but provides no identifiable description of any factual circumstances to support a claim. (*Id*. at 8). This claim, therefore, will not be discussed further.

---

[6] Nurse Kayla was dismissed from the case at Plaintiff's request. He also lists several other nurses for this claim, who were also dismissed at Plaintiff's request. The two nurses remaining as Defendants in the case are Nurse Jason and Nurse B.J. However, as noted above, he made no allegations against them. *See Madewell*, *supra* n. 3.
[7] Plaintiff's actual term was lab-top, which the Court interprets as lap-top. (ECF No. 33 at 6).
[8] Plaintiff also lists Corporal York, Sergeant Branstetter, and Corporal Sowell. These Defendants were dismissed at Plaintiff's request. Deputy Harrell and Sergeant Ford are also listed, but Plaintiff makes no allegations against them. *See Madewell*, *supra* n. 3.

For his fifth claim, Plaintiff alleges that Deputies Ford and Sanchez[9] moved him into a cell that had "dookie"[10] on the cell walls and floor, and under the cell bunk. (*Id*. at 9). Plaintiff proceeds against them in their official and personal capacity. (*Id*.).

Plaintiff attaches several pages where he lists Defendant names and addresses, and inserts conclusory statements without reference to dates or other information. The Court will not consider the information on these pages. (*Id*. at 10-15).

Plaintiff then begins a free-form narrative which is difficult to follow and makes no attempt to adhere to the prisoner complaint form requirements. (*Id*. at 16-18). The Court will interpret these to the extent possible for the Defendants who have not already been dismissed from the case at Plaintiff's request.[11] Plaintiff alleges that all GCDC facility staff and medical staff stood smiling and laughing while Plaintiff banged his head on the metal door of his cell while he was having "mental health issues" on September 29, 2020. (*Id*. at 16). As his apparent sixth claim, Plaintiff then states that on September 28th and 29th of 2020, Deputy Cooper "O.C. sprayed" him through the trap door in his cell. (*Id*. at 17). As his apparent seventh claim, Plaintiff alleges that Lieutenant Stapleton strapped him into a restraint chair on September 28, 2020, let the nurse administer the Haldol shot, left him in the chair for 8 hours, and refused his request to use the toilet. Sergeant Ford also refused to let him out of the restraint chair to use the toilet. As a result, Plaintiff was forced to urinate and defecate on himself. (*Id*. at 17-18). As Plaintiff does not identify the capacity

---

[9] Plaintiff lists other Defendants for his fifth claim, some of which have been terminated from the case, and some of which he makes no factual allegation against. *See Madewell*, *supra* n. 3.
[10] Dookie appears to be a slang term for feces. https://www.yourdictionary.com/dookie (last accessed Feb. 10, 2021).
[11] Several comments duplicate Plaintiff's previous claim concerning the forced injection of Haldol. These comments will be inserted into the appropriate prior claim. Several of the nurses referenced in this section were dismissed from the case at Plaintiff's request.

in which he proceeds against these Defendants for claims six and seven, the Court must interpret them as being in the official capacity only.[12]

Plaintiff seeks compensatory and punitive damages. (*Id*. at 7).

## II.  LEGAL STANDARD

Under the PLRA, the Court is obligated to screen the case prior to service of process being issued.  The Court must dismiss a complaint, or any portion of it, if it contains claims that: (1) are frivolous, malicious, or fail to state a claim upon which relief may be granted; or, (2) seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b).

A claim is frivolous if "it lacks an arguable basis either in law or fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  A claim fails to state a claim upon which relief may be granted if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "In evaluating whether a *pro se* plaintiff has asserted sufficient facts to state a claim, we hold 'a *pro se* complaint, however inartfully pleaded ... to less stringent standards than formal pleadings drafted by lawyers.'" *Jackson v. Nixon*, 747 F.3d 537, 541 (8th Cir. 2014) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)).  Even a *pro se* Plaintiff must allege specific facts sufficient to support a claim. *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985).

---

[12] *Egerdahl v. Hibbing Community College*, 72 F.3d 615, 619 (8th Cir. 1995) (If a plaintiff's complaint is silent about the capacity in which she is suing the defendant, we interpret the complaint as including only official-capacity claims.)

### III.  ANALYSIS

####   A.  Claim One

Plaintiff has stated a plausible claim of excessive force against Corporal Couch for the take-down on July 19, 2020, prior to his injection.  He has also stated a plausible claim against Nurse Jason for the involuntary administration of Haldol, an antipsychotic medication.

####   B.  Claim Three

Plaintiff failed to state a plausible claim for denial of access to the Courts based on his claim that GCDC returned legal mail to him and did not have adequate inmate mail processes in place.

The Supreme Court has held "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Bounds v. Smith,* 430 U.S. 817, 828 (1977).  Nevertheless, *Bounds* "did not create an abstract, freestanding right to a law library or legal assistance." *Lewis v. Casey,* 518 U.S. 343, 351 (1996).  Instead, prison officials must provide inmates with "meaningful access to the courts," *Bounds,* 430 U.S. at 824, and providing a law library is merely one way to comply with this obligation.  *See Bear v. Fayram,* 650 F.3d 1120, 1123 (8th Cir. 2011) (the constitutional requirement of access to the courts may be satisfied in a number of ways including, prison libraries, jailhouse lawyers, private lawyers on contract with the prison, or some combination of these and other methods).

An inmate cannot prevail on an access-to-courts claim unless he can demonstrate he suffered prejudice or actual injury as a result of the prison officials' conduct.  *See Lewis,* 518 U.S. at 351-2; *see also Farver v. Vilches,* 155 F.3d 978, 979-80 (8th Cir. 1998) (per curiam); *Klinger v. Dep't of Corr.,* 107 F.3d 609, 617 (8th Cir. 1997) (to prevail on access-to-courts claim, inmate

7

must show actual injury or prejudice even if denial of access to library is complete and systematic); *McMaster v. Pung,* 984 F.2d 948, 953 (8th Cir. 1993). "To prove a violation of the right of meaningful access to the courts, a prisoner must establish the state has not provided an opportunity to litigate a claim challenging the prisoner's sentence or conditions of confinement in a court of law, which resulted in actual injury, that is, the hindrance of a nonfrivolous and arguably meritorious underlying legal claim.'" *Hartsfield v. Nichols,* 511 F.3d 826, 831 (8th Cir. 2008) (citations omitted).

Here, Plaintiff has failed to allege that he suffered any actual injury due to the GCDC mail-handling process or any GCDC staff. The Court further notes that in this case alone, Plaintiff has filed an initial complaint, two amended complaints, eleven motions, three supplements, three notices, and one objection to a report and recommendation. He also currently has at least three cases pending in this District. Clearly, his ability to access the federal court system has in no way been impeded by any process or person at GCDC.

### C. Claim Five

Plaintiff failed to allege a plausible conditions of confinement claim based on the allegations that Deputy Ford and Deputy Sanchez moved him into cells which had feces on the cell wall, cell floor, and under his cell bunk.

"Because a § 1983 action is a type of tort claim, general principles of tort law require that a plaintiff suffer some actual injury before he can receive compensation." *Irving v. Dormire*, 519 F.3d 441, 448 (8th Cir. 2008). Here, Plaintiff has not alleged he suffered any actual physical injury from the alleged exposure to feces in his cell. Nor does the mere exposure to feces pose an excessive risk of serious harm to inmate health or safety. Indeed, even exposure to raw sewage does not automatically constitute an Eighth Amendment violation. *Smith v. Copeland*, 87 F.3d 265 (8th Cir. 1996) ("[N]ot every overflowed toilet in a prison amounts to a constitutional

8

violation."). Plaintiff has also not alleged that he asked for and was denied cleaning supplies to remedy his concerns about condition of his cell. *See Tokar v. Armentrout*, 97 F.3d 1078, 1082 (8th Cir. 1996) (although Plaintiff alleged filthy toilets, the court found it important to the Eighth Amendment analysis that he never asked for cleaning supplies).

### D. Claim Six

Plaintiff stated a plausible excessive force claim based on his allegation that Deputy Cooper pepper-sprayed him through the trap door in his cell door on September 28th and 29th of 2020.

### E. Claim Seven

Plaintiff stated a plausible excessive force claim based on the allegation that Sergeant Ford and Lieutenant Stapleton strapped him into a restraint chair for eight hours and refused to let him out to use the toilet, forcing Plaintiff to urinate and defecate on himself.

## IV. CONCLUSION

Accordingly, I recommend that the following claims remain for further consideration:

1. Plaintiff's official and personal capacity claims against Deputy Cooper for the alleged excessive use of force prior to his Haldol injection on July 19, 2020.

2. Plaintiff's official and personal capacity claims against Nurse Jason for the alleged unauthorized and forced administration of Haldol, an antipsychotic drug, on July 19th, and September 28th and 29th of 2020.

3. Plaintiff's official capacity excessive force claim against Deputy Cooper for pepper-spraying him through the trapdoor in his cell on September 28th and 29th of 2020.

4. Plaintiff's official capacity excessive force claim against Sergeant Ford and Lieutenant Stapleton for strapping him into a restraint chair for eight hours and refusing to let him out to use the toilet on September 28th and 29th of 2020.

All of Plaintiff's other claims and other named Defendants should be **DISMISSED WITHOUT PREJUDICE**.

The parties have fourteen days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.

**DATED** this **22nd day of February 2021**.

/s/ *Barry A. Bryant*
HON. BARRY A. BRYANT
UNITED STATES MAGISTRATE JUDGE

**FILED**
US DISTRICT COURT
WESTERN DISTRICT
OF ARKANSAS

Feb 22, 2021

OFFICE OF THE CLERK